## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JURY ACTION**

| | |
|---|---|
| RICHARD A. FIGUEROA<br>5814 32nd Street NW<br>Washington, D.C. 20015<br>202-557-1527<br>Plaintiff, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| v. | ) |
| | ) |
| JOHN F. KERRY,<br>Secretary,<br>U.S. Department of State, | )<br>)<br>)<br>) |
| Defendant | )<br>) |

Case: 1:16-cv-00649   *CH DECK)*
Assigned To : Cooper, Christopher R.
Assign. Date : 4/6/2016
Description: Employee Discrim.

COMPLAINT FOR EMPLOYMENT
DISCRIMINATION

JURY TRIAL DEMANDED

I.  **Summary of the Claim**

1.  Plaintiff Richard A. Figueroa, residing at 5814 32nd Street NW of the District of Columbia, a

U.S. citizen born and raised in the Commonwealth of Puerto Rico, was employed as a Foreign

Service Officer (hereinafter FSO) in the Political Cone by Defendant, John F. Kerry, who is

named in his official capacity as the Secretary of the United States Department of State, located

at 2201 C Street NW, Washington D.C. 20520, the agency that employed Plaintiff from March

1986 until September 2009.  Upon personal knowledge, belief, and information developed and

recorded in administrative proceedings, Plaintiff alleges that the Defendant in 2008 discriminated

on the basis of national origin against him and other Hispanic Political Cone FSOs competing for



promotion from the grades of FS-02 to FS-01, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000e to 2000e-17.

II. **Basis for Jurisdiction And Exhaustion of Administrative Remedies**

2.  This Court has jurisdiction under 28 U.S.C. sections 1331 and 1343 as this claim arose under the Constitution, laws, or treaties of the United States, and under section 717 of Title VII 42 U.S.C. sections 2000e-16.  Venue in this Court is proper under 28 U.S.C. sections 1391 (b) and (e).

3.  Federal Administrative remedies have been exhausted.  Plaintiff's Formal Complaint of Discrimination was filed in a timely manner with the Defendant on November 26, 2008.  A Final Agency Decision (hereinafter FAD) denying the claim was issued on August 15, 2013.  (The FAD is attached to this Complaint as Exhibit 1.)  An appeal of the FAD was filed in a timely manner before the Office of Federal Operations of the U.S. Equal Employment Opportunity Commission (hereinafter EEOC) on September 19, 2013.  The decision of the EEOC affirming the Defendant's FAD was issued on March 1, 2016 and was received by Plaintiff on March 6, 2016.  (The EEOC decision is attached to this Complaint as Exhibit 2.)

III. **Allegations and Statement of the Facts**

4.  The facts that give rise to this Complaint are largely undisputed.  Plaintiff was a FS-02 political officer who was eligible and considered for promotion to the FS-01 grade by the 2008 Foreign Service Promotion Boards.

5. Under the Defendant's promotion rules, all FSOs are eligible for promotion to the next grade two years after their last promotion. Plaintiff was promoted from FS-03 to FS-02 in 1997.

6. Defendant's promotion statistics for 2008 establish that FS-02 political officers spent an average of 5.5 years at that grade prior to being promoted to FS-01, an average time-in-class that was half of the 11 years that Plaintiff had spent at the FS-02 grade by 2008.

7. According to statistics kept by Defendant, in 2008 the FS-02 to FS-01 promotion boards considered 278 political officers, selecting 47 for promotion. Broken down by race/national origin, the statistics show that 43 of the 47 promotions were awarded to non-Hispanic whites, 2 to African American officers, 2 to Asian American officers, and 0 to Hispanic political officers. The statistics also show that in 2008, 16 Hispanic political officers, including Plaintiff, were considered for promotion by the boards, and none was selected for promotion.

8. In its FAD, the Defendant found that Plaintiff had established a *prima facie* case for disparate treatment (FAD at p. 13). The Defendant then averred that it had articulated legitimate, non-discriminatory reasons for its actions because: "Through testimony of its agents, Agency has demonstrated it applied the same criteria to consideration of Complainant's promotion candidacy that it applied to all others." (*Id* at p.14)

9. Plaintiff alleges that the statement quoted in paragraph 8 is not supported by any evidence in the record, and amounts merely to an argument of counsel. In other words, beyond meeting a pleading obligation to answer Plaintiff's complaint and *prima facie* case of disparate treatment, the Defendant failed to articulate with sufficient clarity and specificity the reason(s) for Plaintiff's non selection.

10. Reviewing the administrative proceedings that led to the FAD, Plaintiff discerned that the Defendant interviewed a total of eleven State Department employees in conducting its investigation of his complaint. Only seven of the employees interviewed by Defendant actually served on the 2008 promotion boards that considered Plaintiff's candidacy. As recorded in the Defendant's Record of Investigation (hereinafter ROI) and FAD, none of the seven remembered reviewing Plaintiff's file or whether he was rated as qualified. Additionally, despite Defendant's record keeping obligations, the written notes of the seven (reflecting the board's internal deliberations, ranking of candidates, and other work product that could shed light on the decision-making process) were destroyed by the Defendant after Plaintiff's initial contact with an EEO counselor on October 20, 2008.

11. The investigation of Plaintiff's complaint by Defendant also reveals the testimony of four additional employees who did not serve on the 2008 promotion boards. As reflected in the ROI, two employees testified as to general principles, precepts, and guidelines that promotion board members should follow in considering whether or not to promote a candidate, but the two employees did not, and could not, testify whether and how those guidelines were applied to

4

Plaintiff's candidacy. Apart from the interviews recorded in the ROI, the Defendant also interviewed two officials in its Human Resources Bureau who falsely and misleadingly speculated without any basis in fact as to the reasons for Plaintiff's non promotion. The false and prejudicial speculations of Mario Cantu, one of the HR officials, were relied on extensively by the EEOC in its March 1, 2016 decision affirming the Defendant's FAD.

12. Apart from the conclusory nature of Defendant's alleged legitimate, non-discriminatory reason stated in the FAD, and assuming *arguendo* that the Defendant has articulated a specific and clear legitimate, non-discriminatory reason for Plaintiff's non promotion, there is abundant evidence proving that the proffered reason is pretext for discrimination.

13. The fact that Plaintiff was recommended for promotion to FS-01 by the 2004 and 2005 promotion boards, which applied the same criteria used by the 2008 boards, lends credence to the allegation that Defendant's proffered reason is simply pretext for discrimination, particularly when Plaintiff's outstanding job performance subsequent to the 2004 and 2005 promotion recommendations was recognized by Superior Honor awards in 2006 and 2008. (Though recommended for promotion by the 2004 and 2005 boards, Plaintiff was not "reached;" i.e. there were fewer openings at the FS-01 level than the number of recommended candidates, so the recommendation was not acted upon.)

14. Additional evidence that Defendant's EEO policies are deficient, and of Defendant's failure to implement best practices to guard against gender and race discrimination, is found in a 2006

5

Report of Investigation of the Office of Civil Rights by the State Department Inspector General, and in employment statistics kept by the Office of Personnel Management, the EEOC, and the State Department Human Resources Bureau.  These statistics show a steady decrease in Hispanic work force representation from junior to senior officer grades that is consistent with failure to retain and promote Hispanics.  Other statistics show how Hispanics have been discriminated against in assignments, which has a direct and detrimental impact on promotion possibilities.

15.   There is abundant circumstantial evidence that the Defendant's promotion and assignment policies have a disparate impact on Hispanics.  In Congressional testimony and in public *fora* as recently as 2015, the Defendant has admitted that it must improve its hiring, retention, and promotion of women, African Americans, and Hispanics because its policies have a disparate impact on these groups.  The statistics and public admissions are evidence of a consistent pattern of discrimination against women and minorities going back over decades.

### IV.  Prayer for Relief

16.   WHEREFORE, Plaintiff prays for relief as follows:

a.   Reappointment into the foreign service at the level of Senior Foreign Service-grade OC.

b.   Back pay, lost benefits, and compensatory damages in the amount of $450,000.

c.   Costs, including reasonable attorney's fees.

d.   Such other and further relief as this Court finds necessary and proper.

## V. Demand for Jury Trial

17. Plaintiff demands a trial by jury on all issues raised by this Complaint.

Respectfully submitted,

Richard A. Figueroa
*Pro se*
5814 32nd Street NW
Washington D.C. 20015
(202) 557-1527



*U.S. Department of State*
*Washington, DC 20520*

## UNITED STATES OF AMERICA
## BEFORE THE UNITED STATES DEPARTMENT OF STATE

### IN THE MATTER OF:

|  |  |
|---|---|
| **Richard Figueroa,**<br>    **Complainant,**<br><br>       v.<br><br>**John F. Kerry,**<br>    **Secretary,**<br>**U.S. Department of State,**<br>    **Agency.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Agency No. DOS-F-022-09**

### FINAL AGENCY DECISION

#### Statement of the Claim

Complainant alleges that because of his national origin (Hispanic), he was denied promotion by the 2008 Foreign Service Selection Board.

#### Procedural History

On October 20, 2008, Complainant contacted an EEO counselor. Complainant's issues were not resolved through EEO counseling. On November 18, 2008, the EEO Counselor issued a Notice of Right to File, and on November 26, 2008, Complainant filed a formal complaint of discrimination.

By letter dated September 5, 2012, Agency's Office of Civil Rights accepted the complaint for processing pursuant to 29 C.F.R. Section 1614, *et seq.* as specified in the "Statement of the Claim." Investigation of this claim was conducted from

5

October 2012 to January 2013. The Report of Investigation and notice of rights were sent to Complainant in December 2012.

On March 21, 2013, Complainant requested a Final Agency Decision; therefore, this decision is being issued in accordance with 29 C.F.R. § 1614.110.

### Statement of the Facts

Complainant's Evidence

Complainant, Richard A. Figueroa Gonzalez, a U.S. citizen born and raised in Puerto Rico, was an Agency Financial Economist/Anti-Corruption Officer at the time of the alleged discriminatory action. He is presently retired and seeking full-time employment. (Exhibit [Ex.] A, 000070). At the time of the alleged discriminatory action, Complainant's immediate supervisor was Andrew Snow, Deputy Office Director, Office of Monetary Affairs (EEB/IFD/OMA). (Ex. A, 000071).

The 2008 Foreign Service Selection Board reviewed the performance record of Complainant and others for promotion to grade FS-01. The Selection Board did not rank him highly enough for him to be reached for promotion by either the Political Board (Conal) or the Class-Wide Board in 2008.

Complainant alleged that he was qualified for the promotion because the Political Board (Conal) that reviewed his performance record in 2005 recommended him for promotion. Additionally, the Multifunctional Board (the predecessor to the Class-Wide Board) also recommended him for promotion to FS-01 in 2005and each of the preceding six years. Complainant's record (Employee Scorecard) indicates he was ranked 79 out of 87 candidates competing for promotion from to FS-01 in 2004, and 118 out of 141 in 2005. Complainant steadily advanced from grade 5 to grade 2 between 1986 and 1997. Between 2005 and 2008, he competed for promotion on a class-wide scale, but in 2008, he competed only before the Conal Board and not class-wide. (Ex. P, 000198-000201). Complainant further alleged that he was qualified for promotion to FS-01 because in the period between the 2005 promotion recommendations and the 2008 Boards, he accepted greater responsibilities and had been recommended for immediate promotion by three different supervisors. He averred he was recommended for promotion to FS-01 seven consecutive years by five different rating and reviewing officers. (Ex. A, 000073).

Complainant alleged in his Formal Complaint and in his Interrogatory Answers that Department of State statistics show Hispanics are underrepresented in the Foreign Service; that Hispanics are especially under-represented in Senior Foreign Service ranks; and, that the problem is most acute in the European Bureau (EUR), where Complainant has spent a significant amount of his career. (Formal Complaint, 000016; Ex. A, 000075). Complainant alleges statistics reveal that in the period 2000 to 2008, EUR had no Hispanics in career-enhancing office director positions, or in policy-making levels as Deputy Assistant Secretaries or Assistant Secretaries, despite the fact that over the span of eight years from 2000 to 2008 there were over 100 policy level or career-enhancing vacancies in the bureau, but not a single Hispanic employee was named to any of those vacancies. (Formal Complaint, 000016; Ex. A, 000075). He further alleges the Agency has a chronic problem specific to the promotion and retention of Hispanic officers from the mid-levels to the senior ranks. (Ex. A, 000075).

Management's Evidence

Jacqueline R. Smith, Chief, Office of Performance Evaluation (HR/PE), Program Operations Division, Department of State, averred that promotions in the Foreign Service are based on the recommendations and rankings of Selection Boards. In the competitive promotion process, the performance records of employees of the same rank (in this case grade FS-02) and job specialty are reviewed together by annual Selection Boards composed of career Foreign Service members and private citizens who serve as Public Members. (Ex. B, 000079, 000080).

Based on their review of performance records (OPFs), the Boards ranked the employees relative to each other according to demonstrated potential and ability to serve successfully at higher levels. In ranking the employees, Selection Boards use standards developed through study of the performance characteristics that most commonly distinguish the average Foreign Service employee from the outstanding one, and are set forth in the Decision Criteria for Tenure and Promotion. (Ex. B, 000079). These skills generally fall into six (6) categories: 1) leadership, 2) managerial, 3) interpersonal, 4) communication and foreign language, 5) intellectual, and 6) substantive knowledge. (Ex. B, 000079).

Decision Criteria for Tenure and Promotion in the Foreign Service are contained in the Core Precepts, dated April 16, 2005. (Ex. L, 000118-000126). The Core Precepts enlarge upon the specific skills to be considered from a candidate's Official Personnel File (OPF); define the specific skills to be considered; and, state the level of accomplishment expected at different grades. They distinguish

7

between apprentice, journeyman and master level-*i.e.*, the junior, mid-level and senior ranks. (Ex. L, 000118-000126).

Ms. Smith averred that the objective of the Selection Boards is to select and advance the best-qualified employees, and separate at an early stage those who are unsuited for the Foreign Service. The Selection Boards follow these criteria in determining the relative merit for promotion of the employees they review each year. (Ex. B, 000079). Before the Boards begin their work, they have a thorough briefing on Precepts and the Decision Criteria. The Public Members are provided an additional orientation program. (Ex. B, 000079). In Complainant's case, he was reviewed by the 2008 Class-Wide Board (Board G-II B), and the Conal Board (Board G-II Panel A). (Ex. B, 000080).

Ms. Smith further averred, as confirmed by Lisa A. Johnson, that the Selection Boards are guided by the Precepts, Decision Criteria for Tenure and Promotion and the Voting Procedures; the Board's decisions are based only on the evaluation reports and other performance-related documents that are contained in the employees' OPF. The Board members may review the employees' entire OPF, placing the greatest emphasis on their time in class or most recent five years of service, whichever is longer. (Ex. B, 000080; Ex. C, 000085; Ex. M, 000128). Ms. Smith added that the Boards only rank order those candidates who are actually going to be eligible for promotion. (Ex. B, 000080).

Ms. Smith testified that a total of 126 employees wound up being recommended for promotion and ranked; that Complainant, who was mid-ranked by the 2008 Class-Wide and Conal Boards, was not among them; and, that the Boards do not rank-order employees mid-ranked or low-ranked. (Ex. B, 000081). She added that the OPFs do not note the national origin of the candidates reviewed, and Boards may only make their decisions on the documents in the OPFs. (Ex. B, 000081).

Lisa A. Johnson, Supervisory Human Resources, Bureau of East Asian and Pacific Affairs, stated that she served as Board Advisor to the G-II B Class-Wide Board that did the initial review of candidates for promotion. (Ex. C, 000084). She explained why two separate boards were involved in the 2008 Foreign Service Selection Board process, averring that the G-II B Class-Wide Board was an initial board so the members reviewed the files for either promotion or mid-ranking only. Those selected for promotion were then rank-ordered by a separate board for possible class-wide promotion, and those that were mid-ranked were reviewed by yet another board for promotion base on the employee's skill code (cone). (Ex. C,

000084).  She went on to state that Complainant's national origin was not a factor in the 2008 Foreign Service Selection Board's deliberation.  (Ex. C, 000085).

Of the seven (7) people who served on the 2008 Foreign Service Selection Board, only one (1), Christopher W. Murray, Ambassador to the Republic of the Congo, personally knew Complainant.  (Ex. E, 000091).  Complainant worked under his supervision during the period 2001-2002 in the Office of European Regional Affairs, Bureau of European Affairs, in the Department of State, and at that time Mr. Murray was serving as the Deputy Director of the Office with responsibility for political issues involving U.S. relations with the European Union.  (Ex. E, 000091, 000092).  At that time, Complainant was one of about six Foreign Service Officers serving under his supervision, but Mr. Murray did not recall Complainant's specific day-to-day working duties, except that during this period, the rotating presidency of the European Union was held by Spain, and Complainant's Spanish language abilities were an asset to the professional performance of the office.  (Ex. E, 000092).

Amb. Murray could not remember if Complainant's OPF was one of the 420 or so folders that he reviewed.  (Ex. E, 000094).  He averred he was probably acquainted with at least 60 or 70 of the officers whose files he was reviewing.  Thus, Complainant's folder would not have stood out to him as an unusual case, even though he probably was his rating or reviewing officer in 2001 or 2002.  He was seeing a number of files of officers for whom he had previously written ratings or reviewing statements.  (Ex. E, 000094).

He stated that the Board he served on was something of an experimental effort, in which the preliminary work of the Board was performed by telephone conference.  He recalled he was sent a packet of information about the Selection Board process, including precepts for promotion.  He described the process involved as each Board member "calling out" to his or her colleagues a rating that was based on the factors described above.   They discussed in detail those cases where there was a significant divergence between any two or more Board members in the evaluation of an individual, which probably occurred in 15 to 20 percent of the cases, and they reconciled those divergences fairly easily.  He stated there was never any arbitrary action by the Chairperson or any other Board member.  (Ex. E, 000094, 000095).  He had also served on a Selection Board in the summer of 2003, for which he received at least a half-day's training, but he could not really distinguish the specifics of which training he received for the 2003 Board, in comparison to that which he might have received for the 2008 Board.  (Ex. E, 000092, 000093).

Amb. Murray further averred that he was instructed that he could recuse himself from the ranking of any individual for whom he believed that he could not act objectively. An inability to act objectively was defined rather loosely, at least to the extent that as a Board member, he was given wide latitude to decide if he wished to recuse himself. In any event, he was required to recuse himself from commenting on candidates whose annual rating or reviewing statements he had written at any time during the preceding several years. He averred that members of the Board, including himself, did recuse themselves a number of times, and usually without giving a reason in order not to bias fellow Board colleagues. (Ex. E, 000093).

Amb. Murray also averred that he could not recall whether he saw and acted on Complainant's folder. But he asserted that national origin was never a factor in his, nor, to the best of his knowledge, any fellow Board member's ranking of a candidate. (Ex. E, 000095).

The other Board Members were as follows:

- Susan Alexander, Retired, working in a When Actually Employed (WAE) status for the Bureau of Consular Affairs;
- Marian Aretha Williams (retired professor);
- Constance Ann Phlipot, Assistance Coordinator, XLA, Inc. U.S. Embassy Warsaw, Aleja Ujazadowskie 29/31 00-540 Warsaw, Poland;
- Peter Henry Barlerin, Special Advisor to the Kimberley Process Chair (EB/ESC/TFS);
- David T. Donahue, Coordinator for Interagency Provincial Affairs, US Embassy, Kabul, Afghanistan; and
- Geeta Pasi, U.S. Ambassador to Djibouti (Ex. D, 000088; Ex. F, 0000097; Ex. G, 000101; Ex. H, 000104; I, 000107; Ex. J, 000113).

According to each of their respective statements, none of these people knew Complainant or could specifically remember reviewing Complainant's OPF or whether he was rated as qualified, but all testified his national origin was not a factor in the decision-making process. (Ex. D, 000088, 000089; Ex. F, 000097, 000099; Ex. G, 000101, 000102; Ex. H, 000104, 000105; Ex. I, 000107, 000109; Ex. J, 000113, 000114).

All of these people averred that prior to assuming their duties as Board Members on the Foreign Service Selection Board, they participated in training and received briefings on such things as cyber security from Diplomatic Security, recusal policy

from the Office of the Legal Adviser, EEO briefings and training on how to use the Selection Board precepts to make promotion decisions, Explanation of Board Procedures, Ranking of Files, objectivity, impermissible statements in the evaluations, impermissible subjects for Board discussions under EEO and other employment regulations. (Ex. D, 000088; Ex. F, 000098; Ex. G, 000101; Ex. H, 000104; Ex. I, 000108; Ex. J, 000113). Mr. Donahue added, with regard to the rank ordering function of the Board Members' responsibilities, that the Board was provided a "cut-off" number above which an employee would be recommended for promotion. An additional number of employees below the cut-off were recommended for a meritorious step increase. At that time, the lowest five percent of all candidates were required to be recommended for low-rank and letters notifying these employees of this low-rank were prepared by the Board. (Ex. I, 000108).

In 2008, there were only 67 promotion opportunities from FS-02 to FS-01 available. The Class-Wide Foreign Service Selection Board reviewed the performance records of 426 employees who were competing for one of those promotion opportunities. Out of those 426, the Class-Wide Board recommended promotion for only the top 90 candidates. The Conal Board, after reviewing performance records of 245 FS-02 officers in the Political Cone, recommended 36 of them for promotion. (Ex. B, 000080). The individuals who actually received those 67 promotions were the top 55 candidates ranked by the Class-Wide Board and the top 12 candidates recommended by the Political Board. (Ex. B, 000080).

Complainant was mid-ranked by the 2008 Political (Conal) Board and denied consideration by the 2008 Class-Wide Board. (Ex. A, 000072). Mid-ranked employees are not rank-ordered for promotion consideration. (Ex. B, 000081). In other words, while Complainant's record was reviewed by both Boards, he was neither among the 90 individuals the Class-Wide Board recommended for promotion, nor was he among the 36 individuals the Conal Board recommended for promotion.

The evidence has revealed that in 2008 out of the total number of 67 promotions from FS-02 to FS-01, 47 of them were Political Cone officers. Of those 47 candidates promoted, the Department's Race/National Origin data indicates of those who self-identified, two were African-American, two were Asian, 43 were white, and there were no Hispanics or Native Americans. (See Attached documentation provided after the conclusion of the investigation).

**Legal Precedent**

11

Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of disparate treatment discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).

In a promotion claim, a complainant may establish a *prima facie* case by showing that: (1) he or she belongs to a protected class; (2) he or she applied for and was qualified for a position; (3) he or she was not selected for the position; and (4) an individual not in his or her protected class was selected under circumstances which, if left unexplained, would support an inference of discrimination. Keyes v. Secretary of the Navy, 853 F.2d 1016 (1st Cir. 1988) and Weinstein v. U.S. Postal Service, EEOC Appeal No. 01830674 (Feb. 8, 1984).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983). *See also* Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext, but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997).

In a promotion case, the complainant may establish pretext by showing that his or her qualifications were plainly or demonstrably superior to those of the individual(s) selected. Burchfield v. Department of the Treasury, EEOC Appeal

No. 01970152 (Apr. 6, 2000) and <u>Williams v. Department of Education</u>, EEOC Request No. 05970561 (Aug. 6, 1998). The Commission has held, however, that an agency has the discretion to choose among equally qualified candidates. *See* <u>Brown v. Department of the Army</u>, EEOC Appeal No. 01970189 (Feb. 25, 2000) *and* <u>Coleman v. Department of Housing and Urban Development</u>, EEOC Appeal No. 01977187 (Sept. 6, 2001).

<u>Disparate Impact</u>

Analysis of claims brought under a disparate impact theory are fundamentally different from disparate treatment claims. The general concept under disparate impact is that an agency policy, though appearing neutral on its face, has a disproportionate and negative impact on a protected class. The burden of proof is on the complainant, not on the agency, to provide evidence of the statistical impact of the agency's facially neutral policy or practice on the complainant's protected class. *Patterson v. Department of Veterans Affairs*, EEOC No. 0120093468 (Feb. 3, 2010).

Once a complainant establishes a *prima facie* case of disparate impact discrimination, the Agency must demonstrate that the policy was justified by business necessity. In order to prevail, the complainant must then show that there is an alternative policy or practice that can achieve the same goal without a disparate impact. <u>Hadley Guide to Federal Sector Equal Employment Law and Practice: Theories of Discrimination -- Adverse Impact</u>. *See also* <u>Hadley Guide to Federal Sector Equal Employment Law and Practice: Agency's Burden – Business Necessity</u> *and* <u>Hadley Guide to Federal Sector Equal Employment Law and Practice: Alternative Methods</u>.

**Legal Analysis**

<u>*Prima Facie* Case: Established for Disparate Treatment, but not Disparate Impact</u>

In the instant case, Complainant has met the elements necessary for a disparate treatment *prima facie* case of discrimination in promotion on the basis of national origin (Hispanic). He has not, however, met his *prima facie* burden under a disparate impact theory of proving there is a significant statistical impact of the agency's facially neutral policy or practice on the complainant's protected class. These allegations, without corroborating support from statistical information introduced into the record, fall short of meeting Complainant's burden to establish a *prima facie* case of disparate impact discrimination. *See* <u>International</u>

Brotherhood of Teamsters v. United States, 431 U.S. 342 (1977) *quoting* United States v. T.I.M.E.-D.C., Inc., 517 F.2d 299, 315 (5th Cir. 1975). On their face these allegations are too vague and incomplete to establish that institutional bias against Hispanic employees is the reason Complainant was not promoted to a grade FS-01 position in 2008.

## Management's Legitimate Non-Discriminatory Reason

Management's testimony presents a coherent, legitimate non-discriminatory reason for its actions. Through testimony of its agents, Agency has demonstrated it applied the same criteria to consideration of Complainant's promotion candidacy that it applied to all others. Accordingly, the Agency has articulated legitimate non-discriminatory reasons for its actions regarding Complainant's failure to achieve promotion in 2008.

## Pretext

The agency finds that Complainant failed to present evidence that more likely than not, the agency's articulated reasons for its actions were a pretext for discrimination. Ruffin v. Department of the Navy, EEOC Appeal No. 01A04063 (May 3, 2001). Complainant argues that it defies logic that he was deemed ready for greater responsibilities in 2004 and 2005 by the Multifunctional Board, which was the predecessor to the 2008 Class-Wide Board, and which in 2004 recognized his achievements and deemed him qualified to assume responsibilities required at the FS-01 level, as did the 2005 Political Board, and yet in 2008 he was not considered ready. (Ex. A, 000072). He also maintained he was recommended for immediate promotion by three (3) different Supervisors when he assumed greater responsibilities after 2005. (Ex. A, 000073).

The fact that Complainant was deemed ready for promotion and qualified to assume the responsibilities of the FS-01 position in 2004 and 2005, however, does not imply that he should have been ranked highly enough to be reached for promotion in 2008. This is because there is no evidence that the competition for promotion in 2004 and 2005 was the same, or as stiff as that in 2008. Complainant also has not proven that his qualifications were plainly or demonstrably superior to those of the individuals selected for promotion and rank-ordered above the mid-level. *See,* Burchfield v. Department of the Treasury, EEOC Appeal No. 01970152 (Apr. 6, 2000) *and* Williams v. Department of Education, EEOC Request No. 05970561 (Aug. 6, 1998). Having more years of experience than the selectee does not necessarily make an individual more qualified to meet the needs of the agency.

Collins v. Department of the Treasury, EEOC Request No. 05A41248 (October 5, 2004).

Complainant's allegations of national origin discrimination were simply not supported by the evidence, let alone the totality of the record, and he failed to present any plausible evidence that would have demonstrated that management's reasons for its actions were factually baseless or not its actual motivation. Tincher v. Wal-Mart Stores, Inc. and Morgan v. Hilti, Inc., Id. It should be noted that a complainant's subjective beliefs (i.e.,--speculation) cannot be probative evidence of pretext, and therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), cert. denied, 467 U.S. 1215, (1984); see also, Billet v. CIGNA Corp., 940 F.2d 812, 816 (3rd Cir. 1991).

Complainant could prevail only if he proved that the employer's reasons were not only pretext but were pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). See also Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). The complainant cannot second-guess the wisdom of the agency's business decisions. Thus, the Agency was free to rank its employees for promotion, whether fair or unfair, so long as the decision was not a pretext for discrimination. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Here, the complainant did not show that the explanation of the agency for its action was simply a pretext for discrimination.

### Statement of Conclusions and Relief

We find that Complainant has not prevailed on his claim of discrimination based on national origin. Because Complainant has not prevailed on his claim of national origin discrimination, no relief is awarded.

Janice J. Caramanica
Associate Director

Date: 8/15/2013

15



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Richard A. Figueroa, a/k/a,
Bryce A.,[1]
Complainant,

v.

John Kerry,
Secretary,
Department of State,
Agency.

Appeal No. 0120140043

Agency No. DOS-F-022-09

## DECISION

Complainant filed an appeal from the August 15, 2013 final Agency decision (FAD) concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. The Commission's review is de novo. For the following reasons, the Commission AFFIRMS the FAD.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Financial Economist/Anti-Corruption Officer in the Agency's Office of Monetary Affairs in Washington, D.C. The Foreign Service Act of 1980 provides that promotions in the Foreign Service are based on the recommendations and rankings of Selection Boards. Based on their review of performance records, the Boards rank the employees according to demonstrated potential and ability to serve successfully at higher levels. The Selection Boards determine the merit for promotion of employees by using the criteria listed in the Decision Criteria for Tenure and Promotion. The criteria are grouped into six skill sets: leadership, managerial, interpersonal, communication and foreign language, intellectual and substantive knowledge. The 2008 Foreign Service Selection Board reviewed the performance record of Complainant and others for promotion to grade FS-01. The Class-Wide Board reviewed 426 FS-02 officers for 55 promotion opportunities and the Conal (Political) Board considered 245 FS-02 officers in the Political cone

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

for 12 promotion opportunities. The Boards only rank order those who are actually recommended for promotion. The Class-Wide Board subsequently recommended 90 employees for the promotion opportunities and the Conal Board recommended 36 political officers. Complainant was not ranked highly enough for him to be recommended for promotion by either the Conal Board or the Class-Wide Board in 2008.

On November 26, 2008, Complainant filed a formal complaint alleging that the Agency discriminated against him on the basis of national origin (Hispanic) when he was not promoted to the FS-01 level by the 2008 Foreign Service Selection Board.[2]

At the conclusion of the investigation, Complainant was provided with a copy of the report of investigation (ROI) and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant requested a FAD. In accordance with Complainant's request, the Agency issued a FAD, pursuant to 29 C.F.R. § 1614.110(b).

In the FAD, the Agency determined that management had articulated legitimate, nondiscriminatory reasons for its actions. Specifically, in 2008, there were only 67 promotion opportunities from FS-02 to FS-01 available. The Class-Wide Foreign Service Selection Board reviewed the performance records of 426 employees who were competing for one of those promotion opportunities. Out of those 426, the Class-Wide Board recommended for promotion only the top 90 candidates. The Conal Board, after reviewing performance records of 245 FS-02 officers in the Political Cone, recommended 36 for promotion. The individuals who actually received the 67 promotions were the top 55 candidates ranked by the Class-Wide Board and the top 12 candidates recommended by the Conal Board. Complainant was mid-ranked by the 2008 Conal Board and denied consideration by the 2008 Class-Wide Board. Mid-ranked employees are not rank-ordered for promotion consideration. In other words, while Complainant's record was reviewed by both Boards, he was neither among the 90 individuals the Class-Wide Board recommended for promotion, nor was he among the 36 individuals the Conal Board recommended. Through testimony of its agents, management demonstrated that it applied the same criteria to consideration of Complainant's promotion candidacy that it applied to all others.

In attempting to establish that management's reasons for its actions were pretextual, Complainant argued that it defied logic that he was deemed ready for greater responsibilities in 2004 and 2005 by the Multifunctional Board, which was the predecessor to the 2008 Class-Wide

---

[2] Complainant initially filed a class complaint on behalf of himself and similarly-situated Hispanic employees alleging that the Agency "engaged in systemic discrimination in the promotion and retention of Hispanic Foreign Service Officers." On June 29, 2012, the Equal Employment Opportunity Administrative Judge assigned to the matter dismissed the class complaint because the Class Agent (Complainant) failed to satisfy the requirements of commonality, typicality, and numerosity. Complainant v. Dep't of State, EEOC Hearing No. 570-2009-00287X. The Agency subsequently issued a final order fully implementing the AJ's decision and began processing the complaint as an individual complaint of discrimination.

Board, and which in 2004 recognized his achievements and deemed him qualified to assume responsibilities required at the FS-01 level, as did the 2005 Conal Board, and yet in 2008, he was not considered ready. In addition, Complainant maintained he was recommended for immediate promotion by three different supervisors when he assumed greater responsibilities after 2005. The Agency noted that the fact that Complainant was deemed ready for promotion and qualified to assume the responsibilities in 2004 and 2005 does not imply that he should have been ranked highly enough to be reached for promotion in 2008. This is because there is no evidence that the competition for promotion in 2004 and 2005 was the same, or as stiff as that in 2008. Further, Complainant has not proven that his qualifications were plainly or demonstrably superior to those of the individuals selected for promotion and rank-ordered above the midlevel. Accordingly, the Agency determined that Complainant failed to show that management's reasons for its actions were pretext for unlawful discrimination.

Finally, to the extent that Complainant alleged that the Agency's promotional practices had a disparate impact on Hispanic employees, the Agency concluded that Complainant failed to establish a prima facie case under that theory. The Agency determined that Complainant failed to prove management's facially-neutral policy or practice had a significant statistical impact on his protected class. Complainant's allegations, without corroborating support from statistical information introduced into the record, fall short of meeting Complainant's burden to establish a prima facie case of disparate impact discrimination. Thus, the Agency determined that Complainant's disparate impact claims were too vague and incomplete to establish that institutional bias against Hispanic employees was the reasons he was not promoted to a grade FS-01 position in 2008. As a result, the Agency found that Complainant had not been discriminated against as alleged. The instant appeal followed.

## CONTENTIONS ON APPEAL

On appeal, Complainant argues that the Agency gave inconsistent and changing reasons for its employment decision. Further, Complainant challenges the board members' statements that they all applied the same criteria of consideration to each candidate. Complainant alleges that the 2004 and 2005 boards evaluated his record and "de facto concluded and certified" that he met all the requirements to be promoted to a FS-01 officer. In addition, Complainant presents evidence he claims shows that the Agency's promotional practices disparately impact Hispanics. Complainant claims that Hispanics are underrepresented in all ranks at the Agency, but especially at the mid and senior ranks. Complainant alleges that the Agency's present promotion policy is to each year require new promotion boards to conduct a de novo review of any unsuccessful candidate's performance file, and there is no business necessity to do it this way. Accordingly, Complainant requests that the Commission reverse the FAD.

ANALYSIS AND FINDINGS

*Disparate Treatment*

To prevail in a disparate treatment claim such as this, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Corp. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 802 n. 13. The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993).

In the instant case, assuming arguendo that he established a prima facie case of discrimination, Complainant failed to present evidence to rebut the Agency's legitimate, non-discriminatory reasons for its actions. Specifically, the record shows that the Agency selected individuals for promotion based on the recommendations and rankings of Selection Boards. ROI, at 79. The Selection Boards reviewed the performance records of employees and were composed of career Foreign Service members and private citizens who serve as Public Members. Id. Based on their review of performance records, the Boards rank the employees relative to each other according to demonstrated potential and ability to serve successfully at higher levels. Id. In making this decision and in relatively ranking the employees, Selection Boards use the following criteria: leadership, managerial, interpersonal, communication and foreign language, intellectual and substantive knowledge. Id. The primary objective of these criteria is to select and advance the best-qualified employees, and separate at an early stage those who are unsuited for the Service. Id.

The Deputy Director of Human Resources explained that Complainant was in the Political cone, where competition is very stiff and that there were not many opportunities for promotion. ROI, at 21. The record shows that the Class-Wide Board had 55 promotion opportunities while the Conal/Political Board had 12 promotion opportunities. Id. at 80. The Deputy Director added that over the past four years, Complainant had been getting "dinged" on various issues, which led to him being either low or mid-ranked. Id at 21. Based on the review of Complainant's performance records, he was mid-ranked by the 2008 Political/Conal Board, and denied consideration by the Class-Wide Board. Id. at 72, 81. Mid-ranked employees are not rank-ordered for promotional consideration. Id. at 81. As a result, Complainant was not recommended or selected for promotion by the 2008 Selection Boards.

In attempting to show that the Agency's reasons for not promoting him are pretextual, Complainant argued that he was previously deemed ready for promotion in 2004 and 2005, and that he has assumed greater responsibilities since 2005. While Complainant may have been

ranked high enough for promotion in previous years, it does not necessarily follow that he automatically should have been ranked as such in 2008. In the absence of evidence of unlawful discrimination, the Commission will not second guess the Agency's assessment of the candidates' qualifications. Tx. Dept. of Cmty. Affairs v. Burdine, 450 U.S. at 259. Beyond Complainant's bare assertions and subjective beliefs, the Commission finds that there is no evidence in the record that Complainant's national origin played a role in the Agency's promotion decisions or the selection process.

*Disparate Impact*

In addition, Complainant alleges that the Agency's promotional practices disparately impact his protected class. To establish a prima facie case of disparate impact, a complainant must show that an agency practice or policy, while neutral on its face, disproportionately impacted members of the protected class. This is demonstrated through the presentation of statistical evidence that establishes a statistical disparity that is linked to the challenged practice or policy. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988) (complainant must present "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion"). Specifically, a complainant must: (1) identify the specific practice or practices challenged; (2) show statistical disparities; and (3) show that the disparity is linked to the challenged practice or policy. Id. The burden is on a complainant to show that "the facially neutral standard in question affects those individuals [within the protected group] in a significantly discriminatory pattern". Dothard v. Rawlinson, 433 U.S. 321, 329 (1977); see Gaines v. Dep't of the Navy, EEOC Petition No. 03990119 (Aug. 31, 2000).

Complainant alleges that the Agency use of promotion boards each year to conduct a de novo review of any prior unsuccessful candidate's performance disparately impacts Hispanics. In so arguing, Complainant points out that no Hispanics were promoted by the 2008 Selection Boards, and that he was recommended for promotion in 2004 and 2005, yet not promoted in 2008. After careful consideration of the entire record, the Commission finds that Complainant, who carries the initial burden of proof, has failed to provide sufficient evidence to establish a prima facie case of disparate impact in this matter. The statistics provided by Complainant were generalized, vague and insufficient to show that an identified practice of the Agency caused the exclusion of members of his protected class. Moreover, Complainant did not identify the particular aspect(s) of the Agency's use of Selection Boards allegedly responsible for any observed statistical disparity as required in the first and third steps of the prima facie case of disparate impact. Simply identifying the Selection Board program, without more specificity, does not meet Complainant's prima facie burden. Furthermore, the gross statistics offered by Complainant are too broad to draw appropriate statistical conclusions that there was a relevant statistical disparity in this case.

Therefore, the Commission finds that Complainant was not subjected to discrimination as alleged.

CONCLUSION

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to AFFIRM the Agency's final decision because the preponderance of the evidence of record does not establish that discrimination occurred.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0815)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.      The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.      The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do

7                                       0120140043

so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

<u>RIGHT TO REQUEST COUNSEL</u> (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


<u>March 1, 2016</u>
Date

8                                                    0120140043

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**.  I certify that this decision was mailed to the following recipients on the date below:

Richard A. Figueroa
5814 - 32nd St  NW
Washington, DC  20015


John M. Robinson, Director
Office of Civil Rights
Department of State
2201 C St., NW  Rm. 7428
Washington, DC  20520-7310


March 1, 2016
Date

Compliance and Control Division

## Certification

I certify that a copy of the Complaint and Summons was sent this 6th day of April, 2016.

Hand delivery:
Alicia Frechette, Executive Director
Office of the Legal Adviser (L/EX)
U.S. Department of State
2201 C Street NW, Room 5519
Washington DC 20520

Priority Mail:
U.S. Attorney General
950 Pennsylvania Avenue NW
Washington DC 20530

Priority Mail:
U.S. Attorney for the District of Columbia
555 Fourth Street NW
Washington DC 20530

Richard A. Figueroa
5814 32nd Street NW
Washington DC 20015
(202) 557-1527