UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

RICHARD A. FIGUEROA,

    *Plaintiff*,

v.                                                  Civil Action No. 16-649 (CRC)

U.S. DEPARTMENT OF STATE,

    *Defendant*.

## DEFENDANT'S OPPOSED MOTION
## FOR A PROTECTIVE ORDER

Defendant, U.S. Department of State, hereby moves, pursuant to Fed. R. Civ. P. 26(c), for a protective order and to quash Plaintiff's notices of deposition of Ambassador Linda Thomas-Greenfield and Ambassador Arnold Chacon.  Defendant asks that the Court grant its motion, enter a protective order, and quash the deposition notices.  The topics Plaintiff wants to cover in the depositions are neither relevant nor proportional to the needs of the case and therefore fall outside the scope of permissible discovery.  Moreover, Ambassadors Thomas-Greenfield and Chacon are high-ranking government officials without any unique knowledge of the facts of this case and Plaintiff can obtain the information he seeks, to the extent relevant to the case, from

other witnesses or sources.  The grounds for this motion are set forth below and a proposed order is attached.

## BACKGROUND

Plaintiff brought an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., in which he alleges that the U.S. State Department ("Department") discriminated against him on the basis of his national origin as a Hispanic when he was denied a promotion in the Foreign Service in 2008.  See Compl. (ECF No. 1).  At the time of the alleged discrimination, Plaintiff was an "FS-02 political officer" seeking a promotion to the "FS-01 grade by the 2008 Foreign Service Promotion Boards."  Compl. ¶ 4.  In his complaint, Plaintiff cites statistics that he alleges "show a steady decrease in Hispanic work force representation from junior to senior officer grades that is consistent with failure to retain and promote Hispanics" and a "consistent pattern of discrimination against woman and minorities."  Compl. ¶¶ 14-15.  Further, in his complaint and in discovery conferences with undersigned counsel, Plaintiff has referred to testimony and information from other federal court cases and public sources, such as Congressional hearings and television programs.  Plaintiff contends these public statements will prove that the Department discriminated against him and/or treated him and other Hispanics disparately, which prevented him from being promoted to the FS-01 grade in 2008.

Plaintiff has noticed four depositions in discovery: (1) Ambassador Linda Thomas-Greenfield, Assistant Secretary, Bureau of African Affairs (and formerly the Director General of the Foreign Service and Director of Human Resources (hereinafter "Director General")); (2) Ambassador Arnold Chacon, the current Director General; (3) John Robinson, Director and Chief Diversity Officer of the State Department's Office of Civil Rights; and (4) Claire Pierangelo, Director of the State Department's Office of Performance Evaluation.  Defendant has agreed to produce for deposition Mr. Robinson and Ms. Pierangelo.  Despite his access to these and a number of other State Department officials in Defendant's Rule 26(a) Initial Disclosures (Ex. A), Plaintiff insists that he should be permitted to take the depositions of Ambassadors Thomas-Greenfield and Chacon, neither of whom are identified in Defendant's Rule 26(a) Initial Disclosures.  The evidence he seeks to develop in these depositions is neither relevant nor discoverable.

The grounds for the depositions of Ambassadors Thomas-Greenfield and Chacon, according to Plaintiff, are set forth in Plaintiff's Rule 26(a) Initial Disclosures (Ex. B at 2) and Plaintiff's email, dated September 7, 2016 (Ex. C).  First, Plaintiff wants to depose the Ambassadors because he believes they both have "knowledge of the composition and functioning of the Foreign Service, including the role of promotion boards and the precepts, rules and regulations that should be applied in evaluating candidates for promotion."

Ex. B at 2.  Second, Plaintiff seeks to depose Ambassador Thomas-Greenfield about certain public statements she has made and her role as the leadership liaison to an employee affinity group.  Ex. B at 2; Ex C.  Third, Plaintiff wants to depose Ambassador Chacon because Plaintiff believes he has "knowledge and/or access to discoverable information as to the witnesses, statistics, and documents that were provided by the State Department to support the DC Circuit Court of Appeals' findings with regard to discrimination against minorities in the Foreign Service in Shea v. Kerry, 796 F. 3d 42 (D.C. Cir. 2015)."  Fourth, Plaintiff asserts that Ambassador Chacon has a "unique perspective on what barriers Hispanics face in the foreign service" as the first Hispanic Director General.  Exs. B & C.

Defendant objects to these depositions.  As a threshold matter, the requested discovery is simply not relevant.  As a matter of law, the evidence Plaintiff hopes to obtain in these depositions cannot prove that the Department discriminated against Plaintiff.  Further, even if the evidence was relevant, Ambassadors Thomas-Greenfield and Chacon are high-level government officials who have no personal knowledge of the facts.  Thus, they are protected from deposition by the "Apex Doctrine."  The Director General position oversees 17 different offices within the Bureau of Human Resources, only one of which is responsible for Foreign Service promotions, and supervises the work of four Deputy Assistant Secretaries, each of whom is

4

responsible for supervising the Office Directors of 4-5 of these Human Resources offices.  As high-level administrators, the Ambassadors cannot speak to Plaintiff's job performance, qualifications, or the circumstances that led to his non-promotion.  Finally, Plaintiff has not demonstrated that he cannot obtain the evidence from other sources.

## LEGAL STANDARDS

### I. The Purpose of Protective Orders

Fed. R. Civ. P. 26(b)(1) limits the scope of discovery to any "matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other issues, "whether the burden or expense of proposed discovery outweighs its likely benefit."

Accordingly, Fed. R. Civ. P. 26(c) instructs the Court to limit the frequency or extent of discovery, if justice so requires, to protect a party or witness from annoyance, embarrassment, oppression, undue burden, or expense.  Protective orders are frequently used to enforce Rule 26(b)(1)(C), which instructs the Court to limit the frequency or extent of discovery if: (i) the discovery sought is unreasonably cumulative or is obtainable from a more convenient or less burdensome or expensive source; (ii) the party seeking the discovery has had ample opportunity to obtain the information; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Protective orders are entered for "good cause."  The Court has almost complete discretion in determining what constitutes good cause.  Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984).  In general, the Court will balance the need of the party seeking the discovery against the burden on the party responding.  In re Sealed Case (Med. Records), 381 F.3d 1205, 1215–16 (D.C. Cir. 2004).

## II.     The Apex Doctrine

This Court recently discussed the standard of the so-called "Apex Doctrine" concerning requests to take depositions of high-ranking government officials in FDIC v. Galan-Alvarez, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *1 (D.D.C. Sept. 4, 2015).[1]

As this Court explained in FDIC, "high-ranking government officials 'should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'"  Id. at *3 (quoting Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985)) (additional citation omitted).  "'[T]o depose a high-ranking government official, a party

---

[1] While FDIC involved a motion to quash a subpoena issued to a former government official, the doctrine applies equally to former officials and current officials.  See id. at *4.  In fact, the government's interests are even more significant in this case than in FDIC, because of the additional risk of interference with the Ambassadors' official duties in their current roles.

must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique firsthand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'" Id. (quoting Lederman v. N.Y.C. Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013)) (additional citations omitted); see also Alexander v. FBI, 186 F.R.D. 1, 5 (D.D.C. 1998) (stating that high-ranking government officials are generally not subject to deposition unless they have personal, firsthand knowledge about the matter and the party seeking deposition makes showing that information cannot be obtained elsewhere).

The rationales for the Apex Doctrine's protection are threefold, two of which are relevant here: (1) to "ensure[] that high-ranking government officials are permitted to perform their official tasks without disruption or diversion," and (2) to not "discourage otherwise upstanding individuals from public service." Id. at *4 (quotations omitted); see also Kline v. Berry, No. CIV.A. 10-1802 RWR, 2012 WL 2376982 (D.D.C. June 25, 2012) (the rationale behind prohibiting the depositions of high-ranking public servants officials is to allow those officials to spend their valuable time performing their duties rather than preparing for and testifying in depositions, unless the individual has some relevant personal knowledge about the subject matter); 6-26 Moore's Federal Practice - Civil § 26.105 (restricting depositions

of highly placed government officials protects the officials from the distraction of testifying and from the loss of time from public duties, as well as to protect the governmental decision-making process).

## ARGUMENT

Plaintiff cannot demonstrate that Ambassadors Thomas-Greenfield and Chacon have relevant, personal, firsthand knowledge of facts that Plaintiff cannot obtain elsewhere. Plaintiff has identified three topic areas that he wants to cover in the depositions – (1) the Department's Foreign Service promotion process; (2) the Department's promotion statistics; and (3) Department officials' public statements. None of these topic areas meet the criteria for taking the deposition of these high-ranking Department officials.

### I.   The Foreign Service Promotion Process

First, Plaintiff has indicated that he seeks to depose Ambassadors Thomas-Greenfield and Chacon regarding their "knowledge of the composition and functioning of the Foreign Service, including the role of promotion boards and the precepts, rules and regulations that should be applied in evaluating candidates for promotion." See Ex. A. Defendants have already agreed to make Ms. Pierangelo available for deposition. Ms. Pierangelo, the Director of the Office of Performance Evaluation, which manages the Foreign Service promotion process, can address this first topic. Moreover, Defendant identified a number of other witnesses in its initial

disclosures who might address the promotion process if they are available to sit for deposition.  Among other individuals, the members of the 2008 Selection Boards who reviewed and ranked the candidates, and who made the decision to deny Plaintiff promotion from an FS-02 to an FS-01, are better suited to address this topic.  The Ambassadors were uninvolved in the selection process.  Defendant also identified current and former employees of the Office of Performance Evaluation who possess knowledge of the Department's Foreign Service promotion process, including the operation of the Foreign Service Selection Boards, the Foreign Service Selection Board Advisor Notes and Voting Procedures, the Foreign Service Core Precepts, and the Procedural Precepts for the Foreign Service Selection Boards.  In contrast to the number of individuals Defendant identified in its initial disclosures, Ambassadors Thomas-Greenfield and Chacon have no unique, personal knowledge of the selection process that led to Plaintiff's non-promotion.

## II.     Promotion Statistics

Although the allegations in the Complaint are not clear, Plaintiff appears to intend to prove his employment discrimination claim based not on (or not only on) the Foreign Service promotion process and circumstances that led to his non-promotion, but on macro statistics and public statements from high-ranking Department officials concerning its hiring, promotion and retention programs.  Plaintiff seeks to depose Ambassadors Thomas-

Greenfield and Chacon so that he can inquire further into these areas. Plaintiff has not demonstrated, and cannot demonstrate, that the discovery is relevant or proportional to the needs of the case.

Plaintiff cites promotion statistics that he says support his claim that he was discriminated against when he was denied promotion in 2008. See Compl. ¶ 7. It bears mentioning at the outset that disparate treatment and disparate impact are two different theories by which a Plaintiff can prove discrimination. It is not clear from the Complaint which theory or theories Plaintiff intends to pursue. The relevancy of the statistics cited in the Complaint depends on the type of discrimination claim Plaintiff is asserting and how and for what purpose Plaintiff intends to use them.

Although Defendant does not know the precise statistics that Plaintiff intends to introduce in the depositions, or for what purpose he intends to develop this evidence, it appears that at least some of the statistics referenced in the complaint are undisputed facts. See, e.g., Defendant's Answer ¶ 7 (admitting that out of 16 Hispanic FS-02 political officer candidates and 278 FS-02 political officer candidates in total that zero Hispanic FS-02 political officers were among the 47 total FS-02 political officers promoted to FS-01 grade level in 2008). In a recent discovery conference, undersigned counsel indicated to Plaintiff that Defendant would consider stipulating to the statistics Plaintiff wants to use, if it would obviate

the need for the depositions.[2] Alternatively, Plaintiff could issue written discovery in the form of interrogatories or requests for admission, to ascertain Defendant's position on the statistics. Plaintiff informed undersigned counsel that he is unwilling to explore the other options, which required Defendant to bring the instant Motion.[3] Plaintiff has not demonstrated that it is necessary to depose the Ambassadors concerning the statistics alleged in the complaint or that the evidence could not be obtained in a response to written discovery, from another witness, a document, a stipulation, or some other source.

### III. Public Statements

Plaintiff also alludes in his Complaint to "additional evidence that Defendant's EEO policies are deficient, and of Defendant's failure to implement best practices to guard against gender and race discrimination" and "abundant circumstantial evidence that the Defendant's promotion and assignment policies have a disparate impact on Hispanics." See Compl. ¶¶ 14-15. Here, Plaintiff is referring to public statements that Department

---

[2] In light of Defendant's concerns about relevance, and given that Defendant has not yet even seen the statistical evidence at issue, Defendant does not intend to imply that it would agree to stipulate to whatever statistics Plaintiff wants to use, only that there are less burdensome means available.

[3] In accordance with Local Rule 7(m), Defendant hereby certifies that it has conferred with Plaintiff to resolve this Motion without the Court's involvement and that Plaintiff opposes this Motion.

officials have made, and other public documents, such as hearing transcripts and court documents, that he believes constitute "evidence of a consistent pattern of discrimination against women and minorities going back over decades." See Compl. ¶15.  Specifically, Plaintiff has indicated that he needs to clarify statements that Ambassador Thomas-Greenfield made at her Senate confirmation hearing and in a television documentary in which she supposedly expressed her belief that minorities are underrepresented in the Foreign Service.  Ex. B at 2; Ex. C ¶¶ 1-2.  Plaintiff also refers to the fact that Ambassador Thomas-Greenfield serves as the Leadership Liaison to the Hispanic affinity group HECFAA.  Ex. C ¶ 3.

As Defendant understands the issue, Plaintiff intends to argue that the Ambassador's public statements about the need to improve the hiring, promotion and/or retention of Hispanics, and her role as a liaison to an employee affinity group interested in these issues, prove that the Department's current policies have a disparate impact on Hispanics and/or that the Department discriminated against Plaintiff personally when he was denied promotion in 2008.  Contrary to Plaintiff's belief, a statement by a high-level agency official that the agency needs to do a better job of hiring, promoting and/or retaining Hispanics does not equate to an admission that the agency discriminated against Hispanics or to an admission that the agency discriminated against Plaintiff personally.  If anything, the fact that

the Department is making efforts to increase the number of minorities or Hispanics in the Foreign Service weakens Plaintiff's claim that the Department singled him out for disparate treatment based on his national origin as a Hispanic American. Further, general statements regarding the need to increase diversity within the Department would not demonstrate that a specific facially neutral employment practice affects Hispanics in a statistically discriminatory pattern, as is required to establish a prima facie claim of discrimination under a disparate impact theory.

The proffer with respect to Ambassador Chacon is equally tenuous, if not more. Plaintiff claims that Ambassador Chacon "has a unique perspective on what barriers Hispanics face in the Foreign Service" as "the very first Hispanic" Director General. Ex. C ¶ 4. The fact that Ambassador Chacon is Hispanic is neither unique nor consequential. In addition, Plaintiff notes that Ambassador Chacon was the Director General at the time when the Senate passed a bill calling for attention and oversight to employment, retention, and promotion of underrepresented groups to promote a diverse ethnic representation among mid- and senior-level career professionals.[4]

---

[4] This appears to refer to the State Department Operations Authorization and Embassy Security Act, Fiscal Year 2016 (S. 1635). This legislation has not been enacted into law. It was passed by the Senate, but it has not been considered by the full House.

Ex. C. The Senate's bill has no bearing on Plaintiff's discrimination claims. Moreover, Ambassador Chacon's mere presence at the Department at a particular time the Senate passed a bill does not demonstrate that he has unique, personal, firsthand knowledge about the bill, much less the facts of this case.

With respect to Ambassador Chacon, Plaintiff also makes much of the D.C. Circuit's opinion in <u>Shea</u>, 796 F.3d 42. As the very first sentence of the opinion makes clear, the <u>Shea</u> case has no relevance whatsoever to Plaintiff's suit. That case pertained to an affirmative action hiring plan that the State Department put into place to increase racial diversity among the Foreign Service and which ceased to exist <u>more than twenty years ago</u>.[5] At the time, the Department was responding to criticism from Congress about the lack of diversity of the Foreign Service Officer corps, based on conditions at the Department in the mid- to late-1980s. The fact that there was an imbalance of diversity in the 1980s, or even that it resulted from a "predicate of discrimination," cannot possibly prove that those same conditions existed in

---

[5] The hiring plan at issue in <u>Shea</u> was in place from 1990 to 1992. A white former Foreign Service officer brought a Title VII reverse-discrimination claim against the Department alleging he would have been eligible for higher placement, but for these measures the State Department undertook to increase the representation of minorities in the Foreign Service.

2008 when the Department denied Plaintiff promotion. Plaintiff claims that "Ambassador Chacon's testimony with regard to this issue is key to my lawsuit." As with the Senate bill described above, however, Ambassador Chacon's mere presence at the Department at the time that certain legal proceedings occurred does not demonstrate that he has unique, personal, firsthand knowledge about the matter.

Finally, as is the case with the statistics, even if the information sought were relevant to Plaintiff's claims, there are surely less burdensome means to discover the public statements that do not require taking the Ambassadors' depositions. For example, if he does not have them already, Plaintiff could obtain the transcripts from Ambassador Thomas-Greenfield's Senate confirmation hearing with a production request, or could issue written discovery requests to the Department about any such statements.[6] Accordingly, Plaintiff has not demonstrated that he cannot obtain the discovery through other sources.

---

[6] Nothing herein should be regarded as an admission by Defendant that the public statements, or any of the other evidence at issue in this Motion, are relevant, admissible, or discoverable. Defendant reserves all rights. The point is simply that there are less burdensome means available to obtain the evidence without taking the depositions of high-ranking Department officials.

## CONCLUSION

The depositions of Ambassadors Thomas-Greenfield and Chacon are neither relevant nor proportional to the needs of the case and therefore exceed the scope of permissible discovery. Defendant respectfully requests that the Court grant its Motion, issue the protective order, and quash the deposition notices.

September 16, 2016                              Respectfully submitted,

CHANNING D. PHILLIPS
D.C. Bar 415793
United States Attorney

DANIEL F. VAN HORN
D.C. Bar 924092
Assistant United States Attorney

  /s/ Daniel P. Schaefer
DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney
555 Fourth Street, NW
Washington, D.C. 20530
Daniel.Schaefer@usdoj.gov
(202) 252-2531

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 16th day of September, 2016, I have caused a copy of the foregoing Motion for Protective Order to be served by electronic means, through the Court's CM/ECF system, and upon Plaintiff by first class United States mail, marked for delivery to: Richard Figueroa, 5814 32nd Street NW, Washington, DC, 20015.  I also sent the foregoing by e-mail to Plaintiff at richardfigueroa@aol.com.

      /s/ Daniel P. Schaefer
DANIEL. P. SCHAEFER
Assistant United States Attorney