# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____-

| | |
|---|---|
| Richard A. Figueroa | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| John F. Kerry, | ) |
| Secretary, | ) |
| U.S. Department of State | ) |
| Defendant | ) |

Case: 1:16-cv-00649 (CRC)

_____-

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Plaintiff, Richard A. Figueroa, hereby opposes Defendant U.S. Department of State's

Motion for a Protective Order seeking to quash notices of depositions for Ambassador Linda

Thomas-Greenfield and Ambassador Arnold Chacon.  Plaintiff requests that this Court deny the

motion and allow the depositions to take place in the manner and on the subject matter(s)

described in section II, *infra*.

## I.  BRIEF STATEMENT OF FACTS

The instant case is brought under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. sections 2000e *et seq,* alleging discrimination on the basis of national origin by the

1

2008 Foreign Service Promotion Boards.[1]  Plaintiff has noticed for deposition a former Director

General of the Foreign Service, Assistant Secretary for African Affairs Ambassador Linda

Thomas-Greenfield, and the current Director General of the Foreign Service, Ambassador Arnold

Chacon.  Directors General report to the Under Secretary of State for Management Affairs, and

directly oversee the Bureau of Human Resources that handles recruitment, assignment,

evaluation, promotion, discipline, career development, and retirement policies and programs for

the Department's Foreign and Civil Service employees.  The Directors General handle the full

range of personnel functions for the State Department's workforce, and can delve into matters as

small and detailed as deciding individual assignments (Exhibit 1) or into areas as far afield as

legislative matters (normally the province of the Legislative Affairs Bureau at State) that affect

the Foreign Service (Exhibit 2).


While Ambassadors Thomas-Greenfield and Chacon can provide testimony on a wide

range of issues that are relevant to this case, Plaintiff is mindful of their official duties and before

noticing the depositions unilaterally offered the following: ample notice of the depositions; a

commitment to limit the depositions to one hour; and, a willingness to be flexible as to venue and

time for the depositions.  (Exhibit 3).  Despite these concessions voluntarily given, Defendant

chose to file the subject motion.  Plaintiff opposes and believes that Ambassadors Thomas-

---

[1] Nothing in this Opposition to Defendant's Motion for Protective Order is meant to waive
Plaintiff's claim in paragraph 9 of the Complaint that Defendant's reason for Plaintiff's non
promotion is not supported by any evidence in the record, and that its stated reason lacks the
clarity and specificity required under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) and its
progeny.  The discovery that is at issue here goes toward proving that the Defendant's reason is
pretext for discrimination, assuming *arguendo* that Defendant's reason meets the evidentiary
burden and specificity and clarity required by the *McDonnell Douglas* line of cases.

Greenfield and Chacon have discoverable information only they can provide which will allow Plaintiff a full opportunity to show the trier of fact a complete and holistic picture as to why the Defendant's reason for not promoting Plaintiff is pretext for discrimination.

## II.  ARGUMENT

### <u>The Apex Doctrine Is A Limited And Qualified Exception To Discovery</u>

In *Alexander v. FBI*, 186 F.R.D. 1 (D.D.C. 1998) (*Alexander I*) this District Court held that "[g]enerally speaking, '[a] party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *Alexander I* at 3 (citation omitted).  The court in *Alexander* and this Court in *FDIC v.  Galan-Alvarez*, 2015 WL 5602342  acknowledge the general principle that the party moving to quash a deposition notice bears the burden of persuasion. *Id.* at 3. Accordingly, even within the context of the Apex Doctrine, Defendant State Department bears some burden of showing good cause why it seeks to prohibit Ambassadors Thomas-Greenfield and Chacon's depositions.  To carry this burden, the party seeking to prevent discovery "must make a specific demonstration of facts to support [its] request for the protective order and may not rely on conclusory or speculative statements concerning the need for a protective order." *Alexander I* at 3.   Defendant State Department fails to carry this burden in its Motion; rather than specifics, Defendant's arguments are populated with speculation about Plaintiff's reason for requesting Ambassadors Thomas-Greenfield and Chacon's deposition.  (*See*, *e.g.*, page 10 of Defendant's Motion: "Although Defendant does not know the precise statistics that Plaintiff intends to introduce in the deposition, or for what purpose he intends to develop this evidence, it appears that at least some of the statistics referenced in the complaint are undisputed facts.")

Plaintiff recognizes that this Court in *Galan-Alvarez* also required the party seeking to depose an "Apex official" to demonstrate  "exceptional circumstances justifying the deposition [showing] for example, that the official has unique first-hand knowledge related to the litigated claims…." *Galan-Alvarez at 3* (citations omitted).  For the reasons stated below, Plaintiff believes that Ambassadors Thomas-Greenfield and Chacon posses unique, personal information that is relevant to this case and is unobtainable from other sources.


**Defendant's Attempt To Limit Discovery Is Unreasonable As Applied To This Case**


Defendant has taken an unwarranted narrow view of discovery in Title VII cases premised on disparate treatment.  As this Circuit reasoned in *Aka v. Washington Hospital Center*, 156 F. 3d 1284 (D.C. Cir.1998) and in *Hamilton v. Geithner*, 666 F. 3d 1344 (D.C. Cir. 2012), a plaintiff in a disparate treatment case can pursue different avenues to prove that a defendant's reason is pretext for discrimination.  It is well-established that in the absence of direct evidence of discrimination (a rarity in employment discrimination cases) circumstantial evidence can be used to provide evidence of discrimination.  Acceptable circumstantial evidence of pretext for discrimination includes, for example, a defendant's failure to implement and promulgate hiring and promotion policies.  *See*, *e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F. 3d 635 (11th Cir. 1998); *Passantino v. Johnson & Johnson Consumer Products*, 212 F. 3d 493 (9th Cir. 2000).

Defendant may not credibly attempt to minimize the significance of its admission (an

admission it reiterated this year through the Solicitor General's Office) that the affirmative action

program in place from 1990 to 1992 was well-founded because a "manifest imbalance" caused

by "a predicate of discrimination" existed in a "traditionally segregated job category" (defined

as the FS-01 to Senior Foreign Service (SFS) levels). This admission, and the court's agreement

with State in a reverse-discrimination claim, was the core decision in *Shea v. Kerry*, 961 F. Supp.

2d 17 (D.D.C. 2013), *affirmed* 796 F.3d 42 (D.C. Cir. 2015), *cert. denied* 15-742 (U.S. April 18,

2016). In *Shea*, this Court noted that State's justification for its affirmative action program was

not predicated exclusively on statistics showing a manifest imbalance in the traditionally

segregated job category:

> *The bare numbers only tell one side of the story. State does rely solely on a statistical imbalance in the mid- and senior-levels. It has also provided evidence regarding past discrimination in the Foreign Service and institutional and systemic barriers to minority advancement. State has provided enough evidence to show a "predicate of discrimination" implying the statistical imbalances are due in part to some past discrimination by State, rather than simply reflecting societal discrimination.*
>
> *When the Court looks at the whole picture—statistical findings of minority underrepresentation and lower promotion rates, history of discrimination lawsuits, reports finding systemic flaws at State, repeated congressional oversight and criticism, testimony from knowledgeable witnesses that the Foreign Service was discriminatory—it finds that State has met its evidentiary proffer of showing a proper factual predicate for its affirmative action plan. It has provided enough evidence for a reasonable jury to conclude that the MLAAP was justified by correcting a manifest imbalance in the mid- and senior-levels of the Foreign Service, and it served to remedy the lingering effects of State's past discrimination.*

*Shea*, 961 F. Supp. 2d at 38-39 (citation omitted).

It is important to note that the findings of systemic discrimination in *Shea* are consistent

with the consent decrees entered by this District Court in *Palmer v. Christopher*, Civil Action

No. 76-1439 (AER), August 31, 1992, (Department of State found to have discriminated on the

basis of sex in the promotion of female Foreign Service Officers [FSO]) and by the D.C. Circuit

court in *Thomas v. Albright*, 97-5004, March 27, 1998, ( Department of State found to have

discriminated on the basis of race in the promotion of African American FSOs.)  The trilogy of

*Shea, Palmer,* and *Thomas* establish that the Defendant has a history of  gender and minority

group discrimination, and that it has discriminated especially in retention and promotions of

women and minorities, precisely the issue that is at the core of Plaintiff's Title VII claim.


Given this background, and in terms of the discovery at issue here, it is entirely

reasonable and appropriate to follow the holistic approach endorsed by the D.C. Circuit in *Shea*,

*Aka*, and *Hamilton*.  That is, to allow Plaintiff to establish via discovery that the factors that led

to the latest findings of discrimination at State, reflected in the District Court's and Circuit

Court's opinions in *Shea*  (encompassing a period up to 1993, when the affirmative program in

dispute ended) also existed in 2008 when Plaintiff was denied promotion to FS-01, and that they

continue to exist to this day.

## Ambassadors Thomas-Greenfield And Chacon Possess Unique, Personal Information Unavailable From Other Sources

Framing the depositions  of Ambassador Thomas-Greenfield and Chacon in the context

of seeking discoverable information about their knowledge of systemic flaws at State, barriers to

promotion, and congressional oversight and criticism, it is clear that Defendant's reliance on this

Court's decision in *Galan-Alvarez* is misplaced.  As noted in Section I, *supra*,  as a general

matter, a Director General has the duty and responsibility to be involved in any issue affecting

personnel matters at State, no matter how small or inconsequential the issue may seem to

outsiders.  It is, therefore, possible if unlikely that Ambassador Thomas-Greenfield and

Ambassador Chacon have personal knowledge of the shocking promotion numbers in 2008 that

resulted in 91% of the promotions for FS-02 to FS-01 Political Officers being awarded to non-

Hispanic whites, and that every single Hispanic Political Officer out of sixteen (16) was denied

promotion by the 2008 boards.

      But it is NOT for this issue that Plaintiff seeks discoverable information from former

Director General Thomas-Greenfield and Director General Chacon.

### Deposition of Ambassador Thomas-Greenfield

      As Plaintiff has made clear to counsel for the Defendant, Ambassador Thomas-Greenfield

is uniquely able to provide testimony specific to three topics that are relevant to showing

Defendant's reason is pretextual:

A.  The transcript of the Senate Foreign Relations Committee hearings on Ambassador Thomas-

    Greenfield's 2012 DG nomination (Exhibit 4) reflects an exchange between Senator Robert

    Menendez and the nominee, where they address the chronic underrepresentation of

    Hispanics in the Foreign Service and the Civil Service at State.   They reference a

    conversation outside the hearing room between them, apparently about broken promises by

    former DGs to address Hispanic underrepresentation as a priority issue. (*Transcript* at p.

    133.)  An apparently frustrated Senator Menendez asked Ambassador Thomas-Greenfield for

her views about what changes she will make to address problem areas for Hispanics,

including promotion and retention.   Pointing to "charts on the board" of the hearing room,

Ambassador Thomas-Greenfield expressed a "personal commitment" to "review those

policies to ensure that if there is anything in the implementation of our policies that is

blocking increasing those numbers, that we will work to remove those."  (*id.*)  Her

deposition by Plaintiff will help clarify uncertainties about matters not fully discernible from

the transcript, including whether, in fact, Senator Menendez told her that former DGs made

promises or commitments that were unfulfilled, whether she had any success in her own

efforts to address discrimination in the Foreign Service (and if not, what factors impeded her

progress), and to clarify what  she means by "numbers" on "those charts  [that] reflect the

reality." (*id.*)


B.   In 2014 Ambassador Thomas-Greenfield appeared on the PBS program To The Contrary:

"The Foreign Service: In Search of Diversity."  (The video is available at http://

www.pbs.org/video/2365368420/.)  After noting progress in some areas of gender and racial

equality, at the 1:55-2:00 minute mark she states "the numbers aren't there," an apparent

reference to the fact that similar progress has not been achievable with respect to minorities

serving in the Foreign Service at the mid-levels and above.  She reiterates the points at the

22:00 minute mark. Plaintiff seeks to have her clarify those statements, which are, to

Plaintiff's knowledge, the first candid admission on television of the lack of progress in

overcoming underrepresentation of minority groups in the Foreign Service.

C.  As reflected in its latest Notification and Federal Employee Anti-discrimination and
Retaliation Act of 2002 (No FEAR Act) reporting, the Defendant is not in compliance with a
mandated special emphasis program for Hispanics under Title 5 CFR, subpart B, 720.204.
Rather than designating a full-time employee (as it has for Civil Service Women and for
People with Disabilities) to oversee recruitment, retention, and promotion of Hispanics at
State, the Defendant relies on a "Leadership Liaison" to interact with the Hispanic affinity
group at State, the Hispanic Employee Council for Foreign Affairs Agencies (HECFAA).
Since 2012, Ambassador Thomas-Greenfield has volunteered to be the Leadership Liaison to
HECFAA.  Plaintiff seeks her testimony about her role advising HECFAA on promotion and
retention of Hispanics.

## **Deposition of Ambassador Arnold Chacon**

As shown by the email from SFRC staff (Exhibit  2), in matters as important as retention
and promotion policies for women and minorities, the Director General is personally and directly
involved with Congress.   Plaintiff has agreed to limit the deposition of Ambassador Chacon to
one hour and to focus primarily on his efforts to respond to increased Congressional scrutiny of
State's problems retaining and promoting minority FSOs, as reflected in section 220 of the State
Department Operations Authorization and Embassy Security Act for FY 2016 (S.1635).

The fact, however,  that Ambassador Chacon is the first Hispanic to be named Director
General is, contrary to Defendant's assertions, very much unique and consequential, and
discovery is appropriate in this case where Plaintiff alleges national origin discrimination against

Hispanics.  Hispanics face many of the same obstacles that women and African American FSOs have faced in the Foreign Service, and for which those two groups obtained judicial relief through class action lawsuits.  In lieu of legal action, HECFAA strongly supported the nomination of Ambassador Chacon to be Director General as someone with knowledge of the Foreign Service system, who could work within this system to finally address barriers to Hispanic retention and promotion.

## III.  CONCLUSION

The Defendant has not shown sufficient justification for its request for a protective order, and Plaintiff has shown that he seeks discovery of information that is uniquely and personally known to Ambassadors Thomas-Greenfield and Chacon that is unobtainable from other sources. Furthermore, Plaintiff has volunteered to limit the length of the depositions and to focus on specific issues as discussed in this Opposition to Motion for Protective Order.

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant's Motion and permit the depositions of Ambassador Thomas-Greenfield and Ambassador Chacon to proceed as noticed.

Dated:  September 20, 2016

Respectfully submitted,


_____/s/_____
Richard A. Figueroa
*Pro se*
5814 32nd Street NW
Washington D.C. 20015
(202) 557-1527

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th of September, 2016 a copy of the foregoing was sent via

electronic means, through the Court's CM/ECF system, to:

Daniel P. Schaefer,
Assistant United States Attorney,
555 4th Street NW
Washington DC 20530
daniel.schaefer@usdoj.gov

_____/s/_____
Richard A. Figueroa
*Pro se*
5814 32nd Street NW
Washington D.C. 20015
(202) 557-1527
richardfigueroa@aol.com